# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1397 | **DATE** | 9/24/02 |
| **CASE TITLE** | Bodenstein vs. Comdisco | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court affirms the decision of the United States Bankruptcy Court.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 9 |
| ✓ | Docketing to mail notices. | | G.Y. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>COMDISCO, INC., et al.,<br><br>          Debtors.<br><br>IRA BODENSTEIN,<br><br>          Appellant,<br><br>vs.<br><br>COMDISCO, INC. et al., THE OFFICIAL<br>COMMITTEE OF UNSECURED<br>CREDITORS OF COMDISCO, INC., et al.,<br>LAZARD FRÈRES, and ROTHSCHILD, INC.,<br><br>          Appellees. | **DOCKETED**<br><br>SEP 2 5 2002<br><br><br><br><br><br>Case Nos. 02 C 1174<br>and 02 C 1397<br>(consolidated) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States Bankruptcy Court has allowed Comdisco, Inc. and its affiliated debtors ("Debtors") and the Official Committee of Unsecured Creditors of Comdisco (the "Committee") to retain Rothschild, Inc. and Lazard Frères & Co., LLC, respectively, as their investment bankers and financial advisors to assist in the disposition of certain assets of Comdisco. United States Trustee Ira Bodenstein objected unsuccessfully before the Bankruptcy Court that both retention agreements were unreasonable because they require the Debtors and the Committee to indemnify their respective investment bankers for losses, claims, damages, liabilities or expenses incurred in connection with their services. The Trustee filed a timely appeal asking this Court to



find that indemnification provisions for the negligence of professional advisors are never reasonable under §328(a) of the Bankruptcy Code. For the reasons set forth below, the Court affirms the Bankruptcy Court's decision.

## FACTUAL BACKGROUND

On July 16, 2001, Comdisco and certain of its domestic subsidiaries and affiliates filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors-in-possession pursuant to §§1107(a) and 1108 of the Code. On July 25, 2001, the Trustee appointed the Official Committee of Unsecured Creditors.

On September 28, 2001, the Debtors filed an Application for an Order Pursuant to 11 U.S.C. §§ 327(a) and 328 Authorizing the Employment and Retention of Rothschild Inc. as Investment Banker to the Debtors. The Committee filed a similar application for an order approving the retention of Lazard on October 19, 2001. Both applications included engagement letters setting forth the terms of service. Rothschild's engagement letter incorporates an indemnification provision stating that Debtors will indemnify Rothschild, its affiliates, counsel and other professionals, and their respective directors, officers, controlling persons, agents and employees

> [f]rom and against any losses, claims or proceedings, . . . directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, willful misconduct or fraud of such Indemnified Party.

2

Debtors Exhibit 1. Lazard's engagement letter similarly provides that Debtors will indemnify Lazard, its members, employees, agents, affiliates and controlling persons

> [a]gainst any losses, claims, damages, liabilities or expense . . . related to, arising out of or in connection with our engagement . . . except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith or gross negligence.

Committee Exhibit 1.

On November 28, 2001, the Bankruptcy Court entered a final order authorizing the retention of Rothschild, but allowing the Trustee to raise objections regarding the indemnification provision. A similar order was entered for the retention of Lazard. On December 10, 2001, the Trustee filed its objections to both retention agreements, arguing that the indemnification provisions were *per se* improper in Chapter 11 cases. Following a hearing on January 24, 2002, the Bankruptcy Court issued an Order denying the Trustee's objections and approving the terms of the retention agreements. The Bankruptcy Court stated:

> What the U.S. Trustee is arguing for is essentially a different rule in bankruptcy than prevails, as demonstrated by the evidence outside of bankruptcy with respect to retention of professionals. And absent a Congressional mandate to that effect, I don't have the power to impose that.
>
> I understand the visceral reaction that both Mr. Butler and Judge Bernstein referred to - Judge Bernstein in the Halprin [sic] case. I tend to feel it myself. And I think that it is probably something that lawyers would, for historical reasons, feel perhaps more greatly than other professionals. But, nevertheless, it is really the market standard that is to be the controlling standard under the relevant provisions of the Bankruptcy Code. And the market standard is quite clearly that these indemnification provisions are typically part of the terms of retention of investment bankers.

3

Debtors Exhibit 7, pp. 153-54.

On February 13, 2002, the Trustee filed a Notice of Appeal and a Motion for Leave to Appeal. On April 1, 2002, this Court granted the Trustee's motion.

## DISCUSSION

In reviewing a decision by a bankruptcy court, the district court applies the same standards of review that govern appeals in other cases: factual findings are reviewed under a deferential "clearly erroneous" standard, and conclusions of law are reviewed de novo. *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994); *In re Frain*, 230 F.3d 1014, 1016 (7th Cir. 2000).

### A. Reasonableness of Indemnification Provisions

Section 327 of the Bankruptcy Code allows bankruptcy trustees to retain disinterested professionals to assist the trustees in carrying out their duties. 11 U.S.C. §327. Section 328 authorizes the trustee to employ such professionals "on any reasonable terms and conditions of employment." 11 U.S.C. §328(a). The Trustee argues that it is against public policy to indemnify professionals for their negligence, and seeks a ruling that such agreements are unreasonable *per se* regardless of the circumstances. Appellant Mem., pp. 9-10; Appellant Reply, p. 3. According to the Trustee, courts have only recently begun to uphold indemnification demands, and several United States Trustees "have been opposing these arrangements because they invite substandard care in the conduct of bankruptcy proceedings." Appellant Reply, p. 3. Like attorneys and accountants, the Trustee argues, investment bankers should not be able to hide behind indemnity clauses where their mistakes "can cause serious losses to the estate and even force a liquidation." Appellant Mem., pp. 11-12. The Trustee further claims that such

4

agreements are especially inappropriate in the bankruptcy context where "a reckless business decision . . . will harm innocent third persons . . . i.e. debtors' lawful creditors." *Id.* at 19.

Most of the courts addressing indemnity clauses for financial advisors have expressed reservations about them but have almost uniformly declined to impose a blanket prohibition against their use. In *In re Allegheny International, Inc.*, 100 B.R. 244 (Bankr. W.D. Pa. 1989), the bankruptcy court described a financial advisor as a fiduciary and stated that "holding a fiduciary harmless for its own negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries." *Id.* at 246-47. Nevertheless, the bankruptcy court modified the indemnification provisions to exclude acts or omissions constituting negligence or breach of fiduciary duty, and allowed them to stand as modified. The bankruptcy court in *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr. C.D. Cal. 1991), agreed with the proposition asserted in *Allegheny* that indemnification is not consistent with professionalism, and found that the debtor failed to offer any evidence that the proposed agreement was reasonable for purposes of §328. *Id.* at 630-31. The debtor argued that the financial advisor would not accept employment without the indemnity agreement, but the bankruptcy court noted that an advisor "must live with the terms of employment as authorized by the court in which the case is pending." *Id.* at 631. However, the bankruptcy court also determined that "[w]hether indemnification should be offered to a professional should be determined on a case by case basis, after the claim has been asserted for which indemnity has been sought." *Id.*

In *In re Gillett Holdings, Inc.*, 137 B.R. 452 (Bankr. D. Colo. 1991), the bankruptcy court found it "entirely improper and unacceptable" to shield financial advisors from their own negligence. But the bankruptcy court would not hold that indemnity agreements are *per se*

5

unacceptable, instead concluding that they must be analyzed "on a case-by-case basis." *Id.* at 458-59. *See also In re DEC International, Inc.*, 282 B.R. 423, 426 (W.D. Wis. 2002) (stating that there is something "distinctly unpalatable about the idea of indemnifying a professional adviser for its own negligence," but declining to find indemnification provisions in retention agreements illegal in all circumstances); *In re Metricom, Inc.*, 275 B.R. 364 (Bankr. N.D. Cal. 2002) (finding that bondholders' committee failed to establish reasonableness of particular indemnification provision, but agreeing that the Bankruptcy Code "does not prohibit indemnity/contribution or exculpation provisions, and that there is no statutory or binding bankruptcy case law basis upon which to establish a *per se* rule against such protections for professionals in bankruptcy cases").

In *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991), the bankruptcy court refused to recognize any form of indemnification for financial advisors: "[s]imply stated, indemnification agreements are inappropriate." *Id.* at 27. The Debtors and the Committee note, however, that another judge of the same court recently upheld indemnification agreements in *In re Joan and David Halpern Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000), *aff'd*, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000). The *Halpern* court relied on the law of trusts in rejecting the assertion that fiduciaries are not allowed to limit their liability for ordinary negligence:

> A trust agreement may exonerate a trustee for liability except in the case of breach of trust, bad faith or intentional or reckless indifference to the interest of the beneficiary. Restatement (Second) of Trusts § 222 (1959). Similarly, the trust agreement may provide for indemnity to the same extent and subject to the same limitations. *Id.*, § 247 cmt. h.

6

*Id.* at 45-46. The bankruptcy court found that "the idea that a fiduciary cannot be indemnified for negligence, or that such indemnification is contrary to public policy, is just plain wrong." *Id.* at 46. The bankruptcy court went on to explain that "[t]he common law has carved out clear exceptions to indemnity, such as bad faith, breach of trust, dishonesty, self-dealing, and willful, reckless or grossly negligent misconduct, leaving the rest to the parties' agreement." *Id. See also Halpern*, No. 00 Civ. 3601(JSM), 2000 WL 1800690, at *1 (S.D.N.Y. Dec. 6, 2000) (affirming that "indemnification provisions in professional contracts are appropriate provided they are reasonable and in the best interests of the estate pursuant to §328(a)").

The Trustee cites several cases outside the bankruptcy context for the proposition that indemnification clauses for negligence are unenforceable as against public policy. But none of those cases prohibited the use of such clauses in all circumstances and in the absence of statutory authority to that effect. *See, e.g., Yauger v. Skiing Enterprises, Inc.*, 206 Wis.2d 76, 84, 557 N.W.2d 60, 63 (1996) (exculpatory contracts must be clear and unambiguous and "must alert the signer to the nature and significance of what is being signed"); *A to Z Applique Die Cutting, Inc. v. 319 McKibbin Street Corp.*, 232 A.D.2d 512, 649 N.Y.S.2d 26 (1996) (lease requiring a tenant to hold landlord harmless from liability for negligence violated a New York statute expressly voiding such agreements); *Borg-Warner Insurance Finance Corp. v. Executive Park Ventures*, 198 Ga. App. 70, 400 S.E.2d 340 (1990) ("[a]s a general rule, a party can secure an enforceable contractual waiver of liability for the consequences of his own ordinary negligence if this intention is clearly and unequivocally expressed and if such a waiver is not otherwise prohibited by statute"); *Erlich v. First National Bank of Princeton*, 208 N.J. Super. 264, 288, 505 A.2d 220, 233 (1984) (bank acting as investment advisor could not rely on indemnification clause for

7

negligence where it knowingly invested most of the plaintiff's money, constituting all of his savings, in one rather volatile stock even though the plaintiff wanted a conservative investment plan).

Nor is the Court persuaded by the Trustee's attempt to compare financial advisors to attorneys, accountants and underwriters. The ethics rules governing lawyers and accountants – which typically prohibit general indemnification agreements – do not apply to financial advisors and cannot provide the benchmark for assessing the reasonableness of a financial advisor's contract under the bankruptcy laws. *See, e.g., Mortgage & Realty*, 123 B.R. at 629-31 ("ethics rules prohibit an attorney from obtaining an indemnity from a client in connection with professional services," but indemnification can be offered to other professionals "on a case by case basis, after the claim has been asserted for which indemnity is sought"); *DEC International*, 282 B.R. at 428. *See also* 3 Collier on Bankruptcy ¶328.02[1][g] at 328-18 (15th ed. rev. 2001) ("[t]erms and conditions for the debtor's retention of financial advisors often differ from those relating to the debtor's attorneys and other professionals. This stems, in part, from the compensation structure available to financial advisors/investment bankers in nonbankruptcy cases"). Indeed, as Rothschild and Lazard note, the evidence before the Bankruptcy Court tended to show that indemnification agreements like the ones in this case are the norm in the marketplace for financial advisors.

With respect to securities underwriters, the Trustee's cited cases involve gross, as opposed to ordinary negligence. *See Baker v. BP America, Inc.*, 749 F. Supp. 840, 845 (N.D. Ohio 1990) (indemnification is generally unavailable for fraud and §10(b) violations); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969) ("we consider only the case

8

where the underwriter has committed a sin graver than ordinary negligence," and in that regard, "[i]t is well established that one cannot insure himself against his own reckless, wilful or criminal misconduct"). And in *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995), the court explained that federal securities laws seek to encourage underwriters to conduct thorough, independent investigations, and that indemnification would "effectively eliminate the underwriter's incentive to fulfill its investigative obligation." *Id.* at 485. No such investigative obligation attaches to financial advisors in the bankruptcy context. *See DEC International*, 282 B.R. at 428.

Indemnification provisions which insulate professional advisors from their own negligence are arguably distasteful and potentially could excuse substandard performance. The Debtors and the Committee note that the Bankruptcy Code is intended to be applied in a manner that encourages financial advisors, who routinely obtain indemnity clauses outside the bankruptcy context, to serve in bankruptcy cases. *See, e.g., Metricom*, 275 B.R. at 373. At the same time, the Code is also designed to "protect against the danger that a prospective debtor, willing to do whatever necessary to secure the counsel of its choice, may bargain away more than is reasonable . . . knowingly or otherwise." *Gillett*, 137 B.R. at 460. But whether a particular indemnity clause is reasonable in a particular case depends on the facts of the case and can properly be determined only on an individual basis. Factors to consider may include the extent of the debtor's need for a financial advisor; the financial advisor's experience and level of expertise; whether and on what terms the financial advisor would agree to remove the indemnity clause; whether comparable services are available from another financial advisor without an indemnity clause; whether the terms of the agreement were negotiated at arm's length by all interested

parties; and whether the creditors support the retention notwithstanding the indemnity clause. *See, e.g., Halpern*, 248 B.R. at 47; *Metricom*, 275 B.R. at 371-73. As the *Metricom* court pointed out, "anything is possible under the infinite number of potential fact patterns that might ever arise." 275 B.R. at 371. The Bankruptcy Court considered and assessed all of those factors in this case. The Court cannot say as a matter of law, as the Trustee requests, that there are no circumstances under which an indemnification agreement for negligence of a financial advisor may be reasonable and valid.

**B.     Reasonableness of the Rothschild and Lazard Indemnification Provisions**

The Trustee has not challenged the reasonableness of the particular indemnification agreements signed in this case or the facts that led the Bankruptcy Court to approve them. Thus, having determined that such indemnification agreements can be reasonable under appropriate circumstances, the Court must affirm the Bankruptcy Court's decision to approve the applications to retain Rothschild and Lazard over the Trustee's objection.

## CONCLUSION

For the reasons stated above, the Court affirms the decision of the United States Bankruptcy Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   September 23, 2002

10